Not Reported in F.Supp.2d                                                                   Page 5
Not Reported in F.Supp.2d, 2006 WL 2255895 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

claim. The Charge is devoid of any indication that plaintiff requested an **accommodation**, or was denied an **accommodation**, or any allegation that could potentially demonstrate defendant's failure to **accommodate** plaintiff. Furthermore, "a failure to **accommodate** claim is separate and distinct from a claim of **discriminatory** treatment under the ADA" because the two types of claims are analyzed differently under the law. *Green v. Nat'l Steel Corp.,* 197 F.3d 894 (7th Cir.1999); *Burke,* 359 F.Supp.2d at 730. The court finds that plaintiff's claim of failure to **accommodate** is beyond the **scope** of his **Charge**. Accordingly, Count II is dismissed.

*5 Finally, plaintiff argues that because he proceeded *pro se* before the Illinois Department of Human Rights and the EEOC, the court should be lenient when considering whether his claims are beyond the scope of the Charge. Numerous cases in this district, however, have effectively rejected that argument. See *Hall v. Blue Cross Blue Shield of Illinois,* No. 05 C 4280, 2006 WL 87612, at *2 (N.D.Ill. Jan. 11, 2006); *Mitchell v. Elkay Manufacturing Co.,* No. 04 C 7808, 2005 WL 3560686, at *2-*3 (N.D.Ill.Dec. 22, 2005); *Hale v. Renee-Baker,* No. 01 C 7073, 2002 WL 1613765, at *3 (N.D .Ill. Jul. 19, 2002); *McGee v. United Parcel Service,* No. 01 C 9099, 2002 WL 449061 (N.D.Ill. March 22, 2002). In fact, courts have addressed EEOC charges filed *pro se* by carving out an exception for claims that are "like or reasonably related" to the allegations in the EEOC charge, discussed above. *Martinez v. Universal Laminating, Ltd.,* No. 02 C 4410, 2002 WL 31557621, at *3 (N.D.Ill. Nov. 18, 2002); *Burke,* 359 F.Supp.2d at 729.

*CONCLUSION*

For the foregoing reasons, the court grants defendant's motion to dismiss Count II and denies the motion to dismiss Count I.

N.D.Ill.,2006.
Davis v. Central Can Co.
Not Reported in F.Supp.2d, 2006 WL 2255895 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)
(Cite as: 2005 WL 1563215 (N.D.Ill.))

Page 1

C Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
Bronislaw JOKIEL, Plaintiff,
v.
ALPHA BAKING CO., INC., Defendant.
No. 03 C 3845.

June 27, 2005.

Bronislaw Jokiel, Chicago, IL, pro se.

Jonathan C. Goldman, Goldman & Ehrlich, Chicago, IL, for Plaintiff.

Robert Howard Brown, Andrew Seth Goldberg, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

FILIP, J.

*1 Plaintiff, Bronislaw Jokiel ("Jokiel" or "Plaintiff"), brings this action against Defendant, Alpha Baking Co., Inc. ("Alpha" or "Defendant"), his former employer. Plaintiff alleges that Alpha unlawfully terminated his employment on the basis of his alleged disability and failed to accommodate his alleged disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., (Count I). Plaintiff further alleges that Alpha unlawfully subjected him to different terms and conditions of employment the basis of his national origin (he was born in Poland), in violation of 42 U.S.C. § 1981 (Count II). (*See* D.E. 9.) [FN1] The case is before the Court on Defendant's summary judgment motion (the "Motion"). (D.E.26.) For the reasons explained below, the Motion is granted.

FN1. The designation "D.E. __" refers to the various docket entries in this case.

BACKGROUND [FN2]

FN2. The Court takes the relevant facts from Defendant's Local Rule 56.1(a)(3) Statement of Uncontested Material Facts (D.E. 28 ("Def.SF")) and Plaintiff's response thereto (D.E. 22 ("Pl. Resp. to SF"), and from Plaintiff's Local Rule 56.1 Statement of Additional Uncontested Facts (D.E. 21 ("Pl.SAF")) and Defendant's response thereto (D.E. 25 ("Def. Resp. to SAF")). Where the parties disagree over relevant facts, the Court sets forth the competing versions. In addition, the Court resolves genuine factual ambiguities in Plaintiff's favor. *See* Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir.2004).

Alpha is a large commercial bakery engaged in baking and distributing bread products in the Chicago area. (Def. SF ¶ 6.) Jokiel was born in Poland; he arrived in the United States in 1985, and he became a U.S. citizen in approximately 1994. (*Id.* ¶ 7.) Jokiel began working for Alpha's predecessor company as a helper in approximately June 1991. (*Id.* ¶ 1; Pl. SAF ¶ 1.) When Alpha acquired the predecessor company, Jokiel became Alpha's employee. (Def. SF ¶ 2.) Jokiel was terminated by Alpha on April 30, 2002, and his position at that time was as a second class maintenance mechanic. (*Id.;* Pl. SAF ¶ 3.) The duties of a second class maintenance mechanic included rebuilding bakery equipment, plumbing, basic electrical repair, and other duties assigned by his supervisor. (*Id.* ¶ 9.) When Jokiel worked for Alpha, he was able to perform all of his job duties. (*Id.* ¶ 10.) Jokiel and Alpha dispute whether Jokiel was performing his duties satisfactorily or unsatisfactorily during his employment. (*Id.* ¶¶ 11, 12; Pl. Resp. to SF ¶ 12; Pl. SAF ¶¶ 4, 5.)

Alpha has an attendance policy that states rules for issues such as absences, excused absences, and call-ins. (Def. SF ¶ 15.) The policy designates a certain number of points for various attendance offenses, which are also known as "occurrences." (*Id.*) "No call/no shows" are charged three points; unexcused absences and more than three excused absences in a year (except for family leave) are charged one point each. (*Id.*) The occurrences and points are tracked on

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)
**(Cite as: 2005 WL 1563215 (N.D.Ill.))**

a rolling basis during a twelve-month period. (*Id.*) Employees receive a verbal written warning if they accumulate three points, a written warning and suspension if they accumulate six points, a final warning and suspension if they accumulate nine points, and are terminated if they accumulate twelve points. (*Id.*) Jokiel was aware of the policy and had a copy of it. (*Id.*) In early 2002, Alpha slightly revised and issued a new version of the policy. (*Id.* ¶ 16.) Plaintiff received and signed for a copy of the revised policy on April 18, 2002, about two weeks before his termination. (*Id.*)

**\*2** As of June 1, 2001, Jokiel had received a final warning and a three-day suspension for having reached nine points since July 15, 2000. (Def. SF ¶ 18.) (This was not the only "final warning" he received during the last years of his employment. (Pl. Resp. to SF ¶ 17.).) The June 1, 2001, warning informed him that if he accumulated twelve occurrence points in any twelve month period he would be discharged. (Def. SF ¶ 18.) By April 30, 2002, Jokiel had accumulated 15 points and he was terminated. (*Id.* ¶ 19.) Michael Rosen, Alpha's human resources manager, decided to terminate Jokiel because he was in violation of the attendance policy. (*Id.* ¶ 27.) Rosen could not recall ever excusing any employee from termination who reached 12 points under the attendance policy. (*Id.* ¶ 26.) In addition to Jokiel, Alpha terminated six other employees at Jokiel's location for attendance violations between September 18, 2000, and October 11, 2002. (*Id.* ¶ 25.)

According to information given by Mr. Jokiel to his allergy doctor in 2002, Jokiel's allergies started in the United States in the late 1980s. (Pl. Resp. to SF ¶ 35.) Jokiel indicated that symptoms were worse at home than at work. (*Id.*) In approximately 2001, Jokiel developed allergy symptoms in the form of red skin and swollen lips. (Def. SF ¶ 34; Pl. SAF ¶ 6.) The doctor determined that Jokiel was allergic to what is described by Plaintiff as "special dust" and flour, among other things. (Pl. SAF ¶ 8.) Jokiel was given regular allergy shots and took oral medication which alleviated his symptoms. (*Id.* ¶ 9; Def. SF ¶ 34.) At various times, Jokiel gave Alpha notes from his doctor excusing him for absences that were due to his allergies. (Def. SF ¶ 36; Pl. SAF ¶¶ 11-13.) None of the doctor's notes submitted by Jokiel ever stated that he was subject to any work limitations or that he could not fully perform his job (Def. SF ¶ 37), but he was completely excused from work during various periods of time (Pl. Resp. to SF ¶ 37). Jokiel spoke to his supervisor, Derek Cup, about his allergies. (Def. SF ¶ 38; Pl. SAF ¶ 15.) How much Jokiel told Cup and other managers at Alpha regarding his allergies is disputed by the parties. (Def. SF ¶¶ 38-42; Pl. Resp. to SF ¶ 38-42.)

At some point, apparently around two years before he was terminated, Jokiel was moved from performing maintenance duties exclusively in the packaging area of the plant to also performing job duties in the production area. (Def. SF ¶ 42.) Jokiel offers testimony that at the time he was transferred, Mr. Cup, another Polish-American, told him, "We're going to make you healthy so we're going to move you from [the] Packing Department to Production Department. So we're going to watch you, what you're doing and we're going to make you healthy." (Pl. SAF ¶ 16; D.E. 30, Ex. A (Jokiel Tr.) at 133-34.) When Plaintiff asked Cup why he was being moved to production, Cup told Plaintiff that he had to, and that was all. (*Id.* ¶ 17.) Jokiel alleges that he told Cup at that time that he would have bigger problems with his allergies working in production because flour was present. (*Id.* ¶ 18.) During his employment with Alpha, it is undisputed that Jokiel was able to continue working, including during the years he was in the production department. (*Id.* ¶ 24.) Jokiel was able to repair all the parts he was assigned to repair, fix light fixtures, move ladders and scaffolds to their required locations, and crawl under machinery to repair parts. (*Id.*) During his last year or two of employment, Jokiel was able to do everything physically that he was able to do before. (Def. SF ¶ 31.) [FN3]

> FN3. Plaintiff attempts to deny this statement by asserting that Defendant's citation to the record does not support it. The Court has reviewed the portion of the transcript cited (Jokiel Dep. at 129-32), and, although the issue is not material to the Court's resolution of the Motion, the Court finds that the statement is supported by Jokiel's deposition testimony.

**\*3** After Jokiel was terminated by Alpha, he applied to the Social Security Administration for disability insurance. (Pl. SAF ¶ 23.) He stated that he had been disabled since April 30, 2002, the date of his termination. (*Id.*) Jokiel was granted disability as of approximately October 2002. (Def. SF ¶ 49.)

Not Reported in F.Supp.2d  Page 3
Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)
**(Cite as: 2005 WL 1563215 (N.D.Ill.))**

On December 30, 2002, Jokiel filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that he was discharged for absenteeism on account of his disability. (Def. SF ¶ 3.) On April 10, 2003, the EEOC issued a "Dismissal Notice of Right to Sue." (Id. ¶ 4.) Plaintiff filed his original complaint on June 5, 2003. (D.E.1.)

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir.2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

ANALYSIS

Alpha makes several alternative and largely independent arguments in support of its Motion, including that: (1) Jokiel is not a "qualified person with a disability" for purposes of the ADA because he was not substantially limited in any major life activity; (2) Jokiel's failure to accommodate claim is beyond the scope of his EEOC charge; (3) Alpha had no obligation to accommodate Jokiel because it was not aware of his alleged disability; and (4) the undisputed material facts demonstrate that Jokiel was not terminated because of his alleged disability but because of his attendance problems. Alpha also argues that summary judgment should be granted on Jokiel's national origin claim because he has not established a *prima facie* case. The Court agrees that Plaintiff's suit is subject to dismissal for a number of reasons, as explained below.

I. ADA

Section 12112(a) of the ADA prohibits, among other things, discrimination "against a qualified individual with a disability because of the disability of such individual in regard to ... the discharge of employees." 42 U.S.C. § 12112(a); accord **Buie v. Quad/Graphics, Inc.**, 366 F.3d 496, 502 (7th Cir.2004). It is unlawful under the ADA for an employer to fail to make reasonable accommodations to the known physical or mental disabilities of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A); accord **Green v. Nat'l Steel Corp., Midwest Div.**, 197 F.3d 894, 897 (7th Cir.1999). Section 12111(8) defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); accord **Ammons v. Aramark Unif. Servs., Inc.**, 368 F.3d 809, 818 (7th Cir.2004). The determination as to whether the individual is a "qualified individual with a disability" must be made at the time of the adverse employment decision. [FN4]**Weiler v. Household Fin. Corp.**, 101 F.3d 519, 524 (7th Cir.1996) (citation omitted). Section 12102(2) defines a disability, in relevant part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." [FN5]42 U.S.C. § 12102(2)(A); accord, e.g., **Sutton v. United Air Lines, Inc.**, 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Jokiel alleges that he was unlawfully discharged because of his disability and that Alpha failed to make reasonable accommodations to his known disability.

> FN4. Portions of the briefs are dedicated to the issue of whether Jokiel's subsequent filing for disability discrimination bears on his claim that he was disabled at the time he was terminated, or whether he was able to perform his duties with or without a reasonable accommodation if he was completely disabled. For present purposes at least, the Court accepts Plaintiff's suggestion that "Plaintiffs post-termination impairments are immaterial to any analysis, since the determination of disability can only be made at the time of the adverse action." (D.E. 23 at 4). As a result, the Court will not explore whether Plaintiff's representations to the Social Security authorities are inconsistent with his ADA claim. In this regard, the Court notes that Jokiel's claim of being

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06578   Document 9-4   Filed 01/18/2008   Page 5 of 9

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)
(Cite as: 2005 WL 1563215 (N.D.Ill.))

completely disabled as of April 30, 2002, is not necessarily inconsistent with his position that he would have been able to perform his job with an accommodation for his alleged disability before that date. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 802-03, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ( "[D]espite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here. That is because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side.").

FN5. The ADA also defines a disability as "a record of such [a physical or mental] impairment" or "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(B) and (C). Jokiel does not argue that his disability falls under either of these two categories.

A. Jokiel Is Not a "Qualified Individual with a Disability" Under the ADA

*4 For Jokiel's ADA claim to survive summary judgment, he must produce sufficient evidence to meet his "threshold burden" of establishing that "he is disabled as that term is defined in the ADA." Moore v. J.B. Hunt Transp., Inc., 221 F.3d 944, 950 (7th Cir.2000). For an individual to prove that he has a disability, he must demonstrate that he "(1) has an 'impairment' that (2) 'substantially limits one or more of the major life activities.' " Krocka v. City of Chicago, 203 F.3d 507, 512 (7th Cir.2000) (quoting 42 U.S.C. § 12102(2)(A)); accord Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Jokiel alleges that his "allergic condition" is his impairment, and Alpha does not dispute that Jokiel is so afflicted. Jokiel alleges that he is substantially limited in the major life activity of working, which Alpha disputes.

The Supreme Court has specifically reserved the question whether "working" can be a major life activity, see Toyota Motor, 534 U.S. at 200, but the Seventh Circuit has continually held that it can, see, e.g., Kupstas v. City of Greenwood, 398 F.3d 609, 612 (7th Cir.2005); Peters v. City of Mauston, 311 F.3d 835, 843 (7th Cir.2002), and Alpha does not dispute this. "In the context of working, the ... [EEOC] has interpreted 'substantially limits' to mean 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.' " Kupstas, 398 F.3d at 612 (quoting 29 C.F.R. § 1630.2(j)(3)(i)); Peters, 311 F.3d at 843;Krocka, 203 F.3d at 513. The impairment must substantially limit employment generally, not just preclude an employee from performing a particular job. Kupstas, 398 F.3d at 613;accord, e.g., Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 703-04 (4th Cir.2001) ("[O]ne is not substantially limited in the major life activity of working unless one is barred from generally obtaining employment of a given type, as opposed to being barred from a specific job."). The Seventh Circuit has repeatedly instructed that, except for the "rare cases in which the plaintiff's impairments are so severe that his substantial foreclosure from the job market is obvious, he must present some evidence of the number and types of other jobs in the geographic region, from which he would be excluded because of his perceived impairments." Kupstas, 398 F.3d at 613 (collecting authorities; internal quotations and alterations omitted); accord, e.g., Peters, 311 F.3d at 843-44.

Jokiel fails to identify any type of employment outside the Production Department which he was incapable of performing while employed by Alpha. See, e.g., Kupstas, 398 F.3d at 613-14 (collecting cases where similar and more serious restrictions have been held not to substantially limit one's general ability to work in the overall job market). Nor does Jokiel put forward any kind of evidence of the local job market, as the Seventh Circuit requires to make out a claim based on being substantially limited in the major life activity of working. Rather, Jokiel points only to his allegation that Alpha "willfully and maliciously transferred Plaintiff *from* packaging *to* production, where his supervisors knew his disability would be aggravated." (D.E. 23 at 4.) With all respect, this allegation does not demonstrate that Jokiel was significantly restricted in his ability to work in a broad class of jobs or a broad range of jobs in various classes within any job market. See Kupstas, 398 F.3d at 612. Indeed, Jokiel's argument that he "could not work in packaging because Defendant would not allow him to" (D.E. 23 at 4), cuts against a finding that his physical impairment precluded him from working in packaging. Jokiel has failed to adduce evidence to create a triable issue as

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                       Page 5
Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)
**(Cite as: 2005 WL 1563215 (N.D.Ill.))**

to whether he was substantially limited in any major life activity, because he has failed adduce evidence of any impairment that substantially limits his employment opportunities generally, and he thus has failed to create a triable issue as to whether he is a "qualified individual with a disability." Therefore, summary judgment is granted for Alpha as to Count I for Jokiel's claims under the ADA.

B. Jokiel's Failure to Accommodate Claim is Outside the Scope of His EEOC Charge

*5 Alpha argues that, even if Jokiel were a qualified individual with a disability, summary judgment is proper on Jokiel's failure to accommodate claim in Count I because he did not make this allegation in his EEOC Charge. Jokiel's EEOC charge states, in its entirety:

> I began employment with Respondent in June 1991 and my most recent position was Maintenance Mechanic. In or about 2000 I first informed Respondent of my disability. On or about April 30, 2002 I was discharged for absenteeism.
> I believe I have been discriminated against on the basis of disability, in violation of the Americans with Disabilities Act of 1990.

(D.E. 1 at 7.) On his EEOC charge, the only date Jokiel gives for the violation is "4/30/2002," the date of his termination, and the box to indicate a "continuing action" claim is not checked. (*Id.*)

Jokiel has not put forward any evidence that he requested any accommodation from Alpha, but he appears to be arguing that Alpha should have transferred him out of the production department. Plaintiff offers evidence that "[Jokiel] told Cup [his supervisor] that he would have problems with his allergies working in the Production Department because flour is present." (Pl. SAF ¶ 18.) Plaintiff states is in his Memorandum of Law in Response to Defendant's Motion that "[i]nstead of accommodating Plaintiff's allergic condition by allowing him to continue working in the packaging department, Defendant did just the opposite." (D.E. 23 at 8.)

The Seventh Circuit has repeatedly taught that a claim for failure to accommodate is separate and distinct under the ADA from one of disparate treatment because of a disability. *See, e.g., Green v. Nat'l Steel Corp., Midwest Div.,* 197 F.3d 894, 898-99 (7th Cir.1999) ("As we have stated previously, a **failure to accommodate is separate and distinct from a claim of discriminatory treatment under the ADA.**") (citing *Weigel v. Target Stores,* 122 F.3d 461, 464 (7th Cir.1997)). Because Jokiel does not explicitly allege that Alpha failed to accommodate his alleged disability, he may bring this claim only if it is "**reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised.**" *Id.* **at 898** (citing *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994)). The Seventh Circuit instructs that due to the distinct nature of claims for a failure to accommodate and discriminatory treatment under the ADA, including the different analyses required under law, these claims "are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of disability." *Id.* (citing *Marshall v. Fed. Express Corp.,* 130 F.3d 1095, 1098 (D.C.Cir.1997)). Thus, Jokiel's failure to accommodate claim is beyond the scope of his EEOC charge and is not properly before the Court.

*6 Moreover, even if the Court did not find that these claims are not reasonably related under the precedent cited above, summary judgment would be proper because there is no evidence of facts in this case linking the failure to accommodate to the discharge allegation in the EEOC charge. "Claims are reasonably related if there is a factual relationship between them ... [which] means that 'the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals.*' " *Kersting v. Wal-Mart Stores,* 250 F.3d 1109, 1118 (7th Cir.2001) (quoting *Cheek,* 31 F.3d at 501) (emphasis in original). There is no evidence that any decision to transfer Jokiel to production (or to not transfer him out at a later date) was made by Michael Rosen, who made the decision to fire him for his violations of the attendance policy. (Def. SF ¶ 27.) Nor is there any evidence that would link Jokiel's termination to a failure by Alpha to transfer him out of production, which is not surprising given that Jokiel admits that he never told a supervisor or manager that he could not work in the production department due to his allergies. [FN6] (Pl. SAF ¶ 21.) Plaintiff argues that the claims are closely related because Jokiel's absences were the cause of his termination and at least some of the absences were due to his disability. But Jokiel is not arguing that any accommodation he sought involved taking time off work; he wanted to work outside the production department. The current evidence before the Court fails to demonstrate that the absences leading to his

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)  
**(Cite as: 2005 WL 1563215 (N.D.Ill.))**

Page 6

termination were like or reasonably related to his purported requested accommodation of a transfer.

> FN6. While the Court need not decide this issue, the Court notes that Jokiel's failure to request an accommodation from Alpha would also likely independently defeat this claim. See, e.g., Beck v. Univ. of Wisc. Bd. of Regents, 75 F.3d 1130, 1136 (7th Cir.1996) (holding that an employee must engage in an interactive process with his employer and may be held responsible for a failure to inform an employer of any "necessary specific accommodations" he needs). Jokiel's reliance on the "futile gesture" doctrine to excuse his failure to request a transfer is misplaced. He offers testimony that he did not tell a supervisor or manager in the production department that he could not work there because of his allergies because he believed that no one would listen to him. (Pl. SAF ¶ 21.) "Only in the rare case where an employer has essentially foreclosed the interactive process through its policies or explicit actions will the futile gesture doctrine apply." Davoll v. Webb, 194 F.3d 1116, 1133 (10th Cir.1999) (applying futile gesture doctrine where, unlike here, defendant city had express and enforced policy forbidding transfer of employees to positions they sought). The fact that Alpha transferred him into the production department despite his concerns about his allergies did not relieve him of his duty to engage in the interactive process once he realized that his concerns had come to fruition. In this regard, the Court notes that Alpha's policy was to consider requests for accommodation; in addition, Mr. Jokiel had requested leaves of absence in connection with a different medical issue, and those requests had been granted. (Pl. Resp. to SF ¶ 32-33, 44.)

Because Jokiel's claim of discriminatory discharge is not like or reasonably related to his failure to accommodate claim, the Court finds that Jokiel's failure to accommodate claim is beyond the scope of his EEOC charge. For that independent reason, summary judgment is proper on Jokiel's failure to accommodate claim.

C. Jokiel Has Failed to Establish a *Prima Facie* Case of Disability Discrimination

Jokiel argues that he has made out a *prima facie* case of unlawful discharge under the ADA. "As in any other type of employment discrimination case, a plaintiff may establish that she was discharged in violation of the ADA by direct or indirect means." Leffel v. Valley Fin. Servs., 113 F.3d 787, 792 (7th Cir.1997) (citing DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir.1995)). Plaintiff has not put forward any direct evidence that he was fired because of any disability. Rather, he argues that he has satisfied each of the four prongs of a *prima facie* case under the indirect method. (See D.E. 23 at 9- 11.) In order to satisfy his initial burden under the *McDonnell Douglas* framework, Jokiel has to put forward evidence that at least creates a triable issue as to whether: (1) he is disabled within the meaning of the ADA, (2) his work performance met his employers legitimate expectations, (3) he was discharged, and (4) that the circumstances surrounding his discharge indicate that it is more likely than not that his disability was the reason for these adverse actions. See Leffel, 113 F.3d at 794 (citing Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.1995)). Even if the Court were to conclude that Jokiel is a qualified individual with a disability, summary judgment is appropriate for the independent reason that he has not produced evidence to create an issue of fact as to the fourth prong.

*7 Alpha offers evidence that it has an attendance policy that designates various offenses or "occurrences," with related penalty demerits or points. (Def. SF ¶ 15.) It is undisputed that Jokiel had received numerous occurrence points during his employment with Alpha (id. ¶ 17), and that on June 1, 2001, Jokiel had received a three-day suspension and an accompanying letter warning him that an accumulation of twelve such occurrences points in any twelve month period would result in discharge. (Id. ¶ 18.) Jokiel does not contest that as of his April 30, 2002, termination, he had accumulated 15 points. (Id. ¶ 19; Pl. Resp. to SF ¶ 19.) Jokiel does not offer any evidence to dispute the testimony of Rosen, Alpha's human resources manager, that Rosen terminated Jokiel because of his violations of the attendance policy. (Def. SF ¶ 26, 27; Pl. Resp. to SF ¶ 27 (stating, in full, "Uncontested that Mr. Rosen made the statements in paragraph 27.").)

To support his claim, Jokiel points to alleged

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06578   Document 9-4   Filed 01/18/2008   Page 8 of 9

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)
(Cite as: 2005 WL 1563215 (N.D.Ill.))

"sarcastic comments" by his supervisor, Derek Cup, who, some two years before Jokiel was fired, is asserted to have told him, "[W]e're going to make you healthy so we're going to move you from Packing Department to Production Department. So we're going to watch you, what you're doing and we're going to make you healthy." (Pl. SAF ¶ 16; D.E. 30, Ex. A at 132-33.). Even giving Jokiel the benefit of the doubt as to a sinister meaning behind Cup's remarks, these remarks, made some two years before Jokiel's termination, are not relevant to an analysis of the propriety of the termination because Jokiel offers no evidence that Cup was involved in the decision to terminate his employment. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 397 (7th Cir.1997) (purported discriminatory statement by non-decisionmaker not relevant to inquiry into alleged age-based motivations for terminating plaintiff); *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 301 (7th Cir.1996) (same, and collecting numerous cases). In addition, and independently, the alleged "sarcastic comments" were almost surely too remote in time (at least two years before the termination) to materially bear on the analysis of the circumstances surrounding the discharge. *See, e.g., Indurante v. Local 705, Int'l Bhd. of Teamsters, AFL-CIO*, 160 F.3d 364, 367-68 (7th Cir.1998) (holding that alleged prejudicial comments about Italian-Americans by actual decisionmakers, which occurred some five months before plaintiff's termination, were insufficient to create triable issue of pretext).

Jokiel also argues that two "write-ups" by his supervisors as to his performance were "unfair and inaccurate." (D.E. 23 at 10; Pl. SAF ¶¶ 4, 5.) Even if it is true that the write-ups were inaccurate, Jokiel was not terminated for his poor performance; rather, he was terminated for his non-compliance with Alpha's absence policy. As the Seventh Circuit has repeatedly instructed, a district court is not to sit "as a superpersonnel department" that reexamines the correctness, propriety, or wisdom of an otherwise lawful personnel decision. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 785 (7th Cir.2004) (citation omitted). Furthermore, the Seventh Circuit has taught that "the focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Id.* at 784 (internal quotation and citation omitted). The Seventh Circuit also has instructed repeatedly that arguing about whether a company was correct or not concerning an honestly held basis for an employee's firing is "a distraction." *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 900 (7th Cir.1999); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997). These write-ups, even if they were wrong or ill-reasoned, do not constitute on the facts of this case evidence that Jokiel's disability was the real reason for his termination. *Accord Green*, 197 F.3d at 900 (collecting cases).

*8 Jokiel finally points to the fact that at least some of the absences that led to his termination were related to his alleged disability. Given the Seventh Circuit's teaching in *EEOC v. Yellow Freight Systems, Inc.*, 253 F.3d 943, 949-50 (7th Cir.2001) (en banc), that an employee's poor attendance record, even when related to his disability, can support a finding that an employee is not a "qualified individual"--*see, e.g., id.* (collecting cases)--the Court finds that Jokiel's disability-related absences serving as a partial basis for his termination is insufficient to create a triable issue of fact as to whether the circumstances surrounding Jokiel's discharge indicate it is more likely than not that any disability was the reason for his termination. *See, e.g., id.* (collecting cases); *Javonovic v. In-Sink-Erator*, 201 F.3d 894, 899-900 (7th Cir.2000). Thus, for the independent reason that Jokiel has not made out a *prima facie* case of disability discrimination, summary judgment is proper on his unlawful discharge claim set forth in Count I.

II. 42 U.S.C. § 1981

Alpha moves to dismiss Jokiel's claim under 42 U.S.C. § 1981 on the grounds that Jokiel has failed to make out a *prima facie* case of discrimination on the basis of national origin. Alpha argues that the record is totally devoid of any facts demonstrating that Jokiel was terminated because he was Polish. Jokiel does not address this claim in his response and does not put forward evidence supporting this claim.

Assuming without deciding that Jokiel can state a claim for national origin discrimination (as opposed to racial discrimination) under § 1981, [FN7] Jokiel has failed to make out a *prima facie* case of discrimination. The Seventh Circuit teaches that § 1981 claims are analyzed in the same manner as Title VII claims. *See, e.g., Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 638 n. 1 (7th Cir.2001); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir.1998). Jokiel has put forward no evidence under the direct method that he was terminated because he is Polish.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)  
**(Cite as: 2005 WL 1563215 (N.D.Ill.))**

Page 8

Plaintiff also fails under the indirect method because he has failed to identify any similarly situated non-Polish persons who were treated more favorably than him. See Logan, 259 F.3d at 639. While Jokiel disputes that Alpha has offered evidence that any of the numerous other workers it undisputedly terminated for violating its absence policy were not Polish (Pl. Resp. to SF ¶ 25), it is Jokiel's burden to establish a *prima facie* case, and at all times the burden of proof to establish discrimination remains with him. Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir.2004). [FN8] Because Jokiel has failed to put forward any evidence of non-Polish comparators so as to make out a *prima facie* case of discrimination, and because he has otherwise failed to put forth any type of convincing mosaic of evidence to suggest a triable case of anti-Polish job discrimination, summary judgment is proper as to Count II.

FN7. Section 1981 states that all persons shall have the same right to, *inter alia,* make and enforce contracts "enjoyed by white citizens." 42 U.S.C. § 1981(a).

FN8. Jokiel has the burden to identify a non-Polish-American comparator, so the lack of evidence of the other fired individuals' ethnicity inures to his detriment. The Court notes, however, that irrespective of this "burden of production" issue, the record suggests that the termination policy was evenly applied to Polish-Americans and non-Polish-Americans. Alpha includes evidence of several other people fired pursuant to its excessive absenteeism policy. (D.E.29, Ex. 2.) While of course it is never possible to determine ethnicity merely on the basis of one's name, the names of the other people who were fired are not familiar ones to people familiar with the Polish-American community in Chicago (such as probably the majority of people in Chicago, where Polish-Americans are a bedrock part of the community, and where most people, whether of Polish descent or not, have known dozens, if not hundreds, of Polish-Americans through school, work, church, or other activities). In this regard, the others who were fired for excessive absenteeism include "Jesus Gonzales," "Jose Lopez," "Darrel Maddux," and "Cornell Blair." (D.E. 29, Ex. 2; *see also* Pl. Resp. to SF ¶ 14 (uncontested that Mr. Jokiel testified that he experienced conflicts the with "Mexican people" at Alpha, who alleged that he did not want to work and was sleeping on the job)).

CONCLUSION

*9 For the reasons stated above, Alpha's Motion for Summary Judgment (D.E.26) is granted.

So ordered.

Not Reported in F.Supp.2d, 2005 WL 1563215 (N.D.Ill.)

END OF DOCUMENT